

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable O. P. Lockhart, Chairman
Board of Insurance Commissioners
Austin, Texas

Dear Sir:

Opinion No. O-4936
Re: Under the facts stated, does
advertising insurance through
a radio broadcasting company
constitute a violation of the
civil and penal statutes of
Texas?

Your request for an opinion on the above matter has
been received and carefully considered. We quote from your
request as follows:

"A number of radio stations in the state of
Texas broadcast advertising scripts (usually known
as spot commercials) advertising policies of in-
surance offered to the public by insurance com-
panies, some of whom are domestic and some foreign,
and some of whom hold certificates of authority
to conduct business in this state and others of
whom do not possess such certificates.

"Probably typical of the usual method of
operation, and of the content of the advertising
matter broadcast, is the case of one station
which advertises for an unlicensed foreign com-
pany, and whose attorneys write as follows:

"'The station broadcasts this insurance com-
pany's advertisement in exactly the same way that
it broadcasts any other advertisement. The broad-
cast does not purport to be made in behalf of
WOAI. It states that the article is "brought to
you by the Sterling Insurance Company" and again
that "Sterling's message to you is ..." and again
"now a message from our sponsor," that is, the
Sterling Company. The advertisement states to

the public that they can "address their card (in
response to the advertisement) to Sterling, care
of station WOAI." The whole article is one read
as coming from Sterlings and not from WOAI. The
advertisement does not purport to be a recom-
mendation or a statement or anything of the sort
on the part of WOAI.'

"You will observe that the above statement
implied, as we believe the usual facts to be,
that in response to the broadcast solicitation
mail is addressed by persons making inquiries, to
the insurance company in care of the broadcast-
ing station, which station in turn presumably for-
wards these inquiries by mail, or otherwise, to
the foreign company at its home office, or perhaps
such mail is picked up at the broadcasting sta-
tion by persons representing the insurer.

"You may assume that the radio stations them-
selves are either incorporated or not incorporat-
ed, that the advertising is accomplished either
by the owners in person or through the agency of
employees; that all of the insurers for whom the
broadcasts are made are incorporated; that the
insurers pay a valuable consideration to the
radio stations for the broadcast; and that the
solicitations do result in inquiries from listen-
ers in the State of Texas, which in due course
reach the insurer and result, in many cases, in
the ultimate consummation of insurance contracts
by the insurer and payment for life, health and
accident policies, as well as casualty policies
of various types; and it is reasonable to assume
further that the mail solicited by the radio stat-
ions contains not only inquiries, but in some
cases application blanks and remittances for in-
surance. Assume further that the radio stations
and their employees are not licensed as insurance
agents.

"We desire your opinion as to whether (a) in
the case of insurers holding certificates of au-
thority to conduct their business in this State,
and (b) in case of insurers who do not hold such

certificates, operations of the kind hereinabove
described constitute a violation of any of the
terms of the following, or any other, Articles
of the Civil and Penal Statutes of our State:

"R. S. Articles 5055 and 5056; Penal Code
Articles 568-570 inclusive, and 570a.

"You will observe that counsel for the radio
station above named argues that these broadcasts
do not constitute a solicitation of applications
for insurance and that their purpose and effect
are not 'in any manner to aid in transaction of
the business of any insurance company,' that the
station or its employees are not persons 'who take
or transmits other than for himself any application
for insurance ... or who advertises or other-
wise gives notice that he will receive or trans-
mit same ... or do or perform any other act or
thing in the making or consummating of any contract
of insurance for or with any such insurance com-
pany other than for himself ... whether any of
such acts shall be done at the instance or re-
quest, or by the employment of such insurance
company, or of, or by, any broker or other per-
son ...;' and that they are not persons who 'so-
licit life, health or accident insurance or act
as a life, health or accident insurance agent
for any person or insurance company or associa-
tion not authorized to do business in Texas ...'
because, principally, the solicitations on their
face purport to be made only behalf of the in-
surer, and not joined in or recommended in any
way by the broadcasting station itself. The re-
ply to that position seems to us plain: that the
existence of a solicitation is not dependent up-
on the question of whether the solicitor pur-
ports to act in his own name or interest or in
those of his principal or advertiser, nor upon
the motive or the compensation or lack of motive
and compensation upon the part of the solicitor;
but that it is sufficient if there be an im-
portunity that the hearers make application or
inquiries to the insurer which leads or is cal-
culated and tends to lead to the transaction or
consummation of insurance contracts.

"Counsel for the station above named also argues that if the broadcasts are in violation of the statutes above cited, they are equally a violation whether the advertisement is for a licensed company or an unlicensed company; which, of course, might be true aside from the provisions of Penal Code Article 570a; and they further argue that if it is a violation for the radio stations to advertise insurance, it is equally a violation for newspapers and magazines to run advertisements for insurance companies without being licensed as agents."

Article 5055 of the Revised Civil Statutes, is as follows:

"It shall not be lawful for any person to act within this State, as agent or otherwise, in soliciting or receiving applications for insurance of any kind whatever, or in any manner to aid in the transaction of the business of any insurance company incorporated in this State or out of it, without first procuring a certificate of authority from the Commissioner."

Article 5056 of said statutes is in part as follows:

"Any person who solicits insurance on behalf of any insurance company, whether incorporated under the laws of this or any other State or foreign government, or who takes or transmits other than for himself any application for insurance or any policy of insurance to or from such company, or who advertises or otherwise gives notice that he will receive or transmit the same, or who shall receive or deliver a policy of insurance of any such company, or who shall examine or inspect any risk, or receive, or collect, or transmit any premium of insurance, or make or forward any diagram of any building or buildings, or do or perform any other act or thing in the making or consummating of any contract of insurance for or with any such insurance company other than for himself, or who shall examine into, or adjust or aid in adjusting any loss for or on behalf of any such insurance company, whether any of such acts shall be

done at the instance or request, or by the employment of such insurance company, or of, or by any broker or other person, shall be held to be the agent of the company for which the act is done, or the risk is taken, as far as relates to all the liabilities, duties, requirements and penalties set forth in this chapter. . . . "

Article 568 of the Penal Code is as follows:

"Whoever solicits insurance on behalf of any insurance company, whether incorporated under the laws of this or any other State, or foreign government, or who takes or transmits other than for himself, any application for insurance, or any policy of insurance, to or from such company, or who advertises or otherwise gives notice that he will receive or transmit the same, or shall receive or deliver a policy of insurance of any such company, or who shall examine or inspect any risk, or receive or collect or transmit any premium of insurance, or make or forward any diagram of any building or do any other act in the making or consummating of any contract of insurance for or with any such insurance company other than for himself, or who shall examine into, or adjust or aid in adjusting any loss for or on behalf of any such insurance company, whether any of such acts shall be done at the instance, or by the employment of such insurance company, or of or by any broker or other person, shall be held to be the agent of the company for which the act is done or the risk is taken, as far as relates to all the requirements and penalties herein set forth."

Article 570 of said Code is as follows:

"Whoever shall do or perform any of the acts or things mentioned in the first article of this chapter for any insurance company referred to in said article without such company having first complied with the requirements of the laws of this State, shall be fined not less than five hundred nor more than one thousand dollars."

Article 570a of said Code is as follows:

"Penalty for acting as, or employing, life, health, or accident insurance agent without license

"Sec. 6. Any person who shall act as a life, health or accident insurance agent without having first obtained a license as herein provided, or who shall solicit life, health or accident insurance or act as a life, health or accident agent without having been appointed and designated by some duly authorized life insurance company, accident insurance company, life and accident, health and accident, or life, health and accident insurance company, or association, or organization, local mutual aid association, or statewide mutual association to do so as herein provided, or any person who shall solicit life, health or accident insurance or act as an agent for any person or insurance company or association not authorized to do business in Texas; or any officer or representative of any life insurance company, accident insurance company, life and accident, health and accident, or life, health and accident insurance company or association, or organization, local mutual aid association, or statewide mutual association who shall knowingly contract with or appoint as an agent any person who does not have a valid and outstanding license, as herein provided shall be guilty of a misdemeanor and, upon conviction, shall be fined any sum not in excess of Five Hundred Dollars ($500) and shall be barred from receiving a license as an insurance agent for a period of at least two (2) years."

As we understand the facts stated by you, whether or not the radio stations referred to by you are violating the provisions of the statutes above quoted depends upon whether or not said stations "solicit" insurance on behalf of some insurance company, as we would have to assume facts not shown to exist in order to bring said stations within any of the other provisions of said statute.

Webster's Dictionary gives the following definitions
of the word "solicit":

"To make petition to; to entreat; importune;
as, to solicit the King for relief; now, often,
to approach with a request or plea, as in sell-
ing, begging, etc.; as, to solicit one's neigh-
bors for contributions.

"To endeavor to obtain by asking or pleading;
to plead for; as, to solicit an office, a favor,
alms; also, to seek eagerly or actively; to
court."

In the case of Carter v. State, 98 S. W. 704, the
Supreme Court of Arkansas was dealing with a case wherein W.E.
Carter was convicted of soliciting orders for the sale of
liquor in territory where the sale thereof was prohibited
by law. He had inserted in the Nashville News the following:

"J.M. Strange, in Texarkana, will be glad
to have your orders for Joel B. Frazier Whiskey.
* * * Please send your order to J. A. Wilson,
of Texarkana, for Bonny Rye."

This paper was printed within ten miles of a college,
within which limits the sale or giving away of intoxicating
liquors was prohibited. The law alleged to have been violat-
ed by having such newspaper item published is as follows:

"It shall be unlawful for any person, firm,
partnership or corporation engaged in the sale of
alcohol or any spirituous, ardent, vinous, malt
or fermented liquors where the same may be lawful,
to solicit orders, either by agent or otherwise,
for the sale of alcohol or any spirituous, ardent,
vinous, malt or fermented liquors in any place
or places in this State where the same is prohibit-
ed by law."

In reversing the judgment of conviction in said case,
said court made the following holding:

"The many uses of the term 'advertise,' in
its various forms, may be found in the Century

Dictionary, from which this definition, the one most nearly reaching to the facts here, is taken: 'The act or practice of bringing anything, as one's wants or one's business, into public notice, as by paid announcement in periodicals, or by hand bills, placards, etc., as to secure customers by advertising.' 'To solicit' is thus defined: 'To importune, entreat, implore, ask, attempt, try to obtain.' Anderson's Law Dictionary. See, also, Century Dic. 'Solicit.' None of the uses of this term embrace advertising, although advertising is a method, in a broad sense, of soliciting the public to purchase the wares advertised. But soliciting is a well-known and defined action, and advertising is an equally well-known and defined action, and they are not identical. It is true that they are intended to reach the same result, the sale of wares, but different routes are traveled in reaching that end. One is legislated against, and the other is not. If the Legislature intended to make criminal the advertisement in prohibited district of liquor, it would have said so, and not left such an important matter to be implied from the use of a general term. It would be a strained and unnatural use of the term 'solicit' to include in it advertisements in newspapers."

In the case of Golden & Company v. Justice's Court of Woodland TP., Yolo County, et al., 140 Pac. Rep. 49, District Court of Appeals, California, the court was dealing with a petition for a writ of prohibition to restrain the prosecution of the respondent under a complaint charging that he had solicited the sale of certain alcoholic liquors within the limits of the City of Woodland, a municipal corporation, by having mailed certain letters, price lists, and an order sheet at the City of San Francisco, addressed to a resident of the City of Woodland, the said circular letter, price list, and order sheet constituting an advertisement of certain alcoholic liquors offered for sale by said petitioner. In passing upon whether or not said letter solicited an order for whiskey, the court made the following holding, which is applicable here:

Honorable O. P. Lockhart, page 9

"Counsel, however, perceive no difference between the act of soliciting orders by means of letters or circulars sent through the mail to particular individuals in no-license territory and the circulation in such territory of newspapers, containing among others relating to other matters, advertisements extolling the quality and giving the prices of certain brands of liquor. But there is an obvious distinction between the two propositions, and it lies in the fact that, in the one case, the minds of particular persons are directly addressed upon a single subject, and their attention thus specially called to the subject-matter of the letter or circular, while in the other no particular person is appealed to upon any one of the various matters which are usually referred to in or given publicity through the medium of the advertising columns of a newspaper of general circulation. 'Solicit,' according to Webster's Dictionary, is 'to apply to for obtaining something; to awake or excite to action; to arouse a desire in,' etc., and it may apply to cases where one asks another for a bribe, or asks another to commit bribery or larceny and other offenses. Black's Law Dict., p. 1105. It implies personal petition and importunity addressed to a particular individual to do some particular thing, and it is unquestionably in this sense that the term is used in the statute. If our statute against bribery in terms, as in effect it does, had been made to say that a public officer who solicited a bribe for the performance of some act within his official duties, and the officer should, by letter, solicit the payment to him of a bribe, it would not for a moment be questioned that such act of the officer would constitute a solicitation of a bribe within the meaning of the law. So it is and must be true here. A letter or circular, such as the one involved in this case, addressed to a particular person, and emphasizing in alluring terms the superior quality of certain commodities, giving the prices at which they may be purchased, and vigorously importuning the addressee to buy and use the same, can be no less a personal solicitation, for orders for such commodities than would be the solicitation of a bribe through the medium of a letter, or, indeed, than would be the case of like solicitation prosecuted in person

by the party by whom such letter or circular is
sent out. An advertisement can in no sense be
held to be a _personal_ petition or request addressed
to any particular person. The ordinary advertise-
ment so published has the effect only of directing
attention, in a general way, to the matter adver-
tised, and is, as before stated, addressed to the
general public wherever such newspaper is cir-
culated."

It is the opinion of this department, therefore, un-
der the facts stated that the radio broadcasting companies re-
ferred to have not violated the provisions of the civil and
penal statutes of Texas above set out.

Trusting that this satisfactorily answers your in-
quiry, we are

Very truly yours

ATTORNEY GENERAL OF TEXAS

By          _Jas. W. Bassett_
            Jas. W. Bassett
            Assistant

JWB:db

APPROVED OCT 26 1942

_Gerald C. Mann_

ATTORNEY GENERAL OF TEXAS